JUDGE SULLIVAN

08 CV 00407

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---------------------------------------------------------------------X
KINGS OCEAN SHIPPING CO. LTD., :
: Plaintiff, :
:
- against - :
:
OCEAN TRAFFIC CORP., :
:
Defendant. :
---------------------------------------------------------------------X

08 CIV

ECF CASE

## VERIFIED COMPLAINT

Plaintiff, KINGS OCEAN SHIPPING CO. LTD., ("Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, OCEAN TRAFFIC CORP., (hereinafter referred to as "Defendant") alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2. Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in Seoul, South Korea and was at all material times the disponent owner of the M/V ATLANTIC DREAM (hereinafter referred to as "the Vessel").

3. Defendant was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in Tokyo, Japan and was at all material times the charterer of the Vessel.

4. By a charter party entered into on November 3, 2007 via the Fixture Note signed by the parties, Plaintiff time chartered the Vessel to Defendant for a period of about 90 days at a daily hire rate of $24,500 or prorata. *See Fixture Note attached as Exhibit 1.*

5. Plaintiff delivered the Vessel to Defendant pursuant to the charter party and performed all of its obligations under the charter party.

6. Defendant has breached the charter party inasmuch as it has illegally failed to pay to Plaintiff outstanding hire for the use of the Vessel, now past due, in the amount of $637,000 which represents the period from December 21, 2007 to January 16, 2008, *i.e.*, 26 days x $24,500.00 = $637,000. Defendant has failed to pay this amount to Plaintiff despite due demand.

7. Pursuant to the charter party, all disputes are to be submitted to arbitration in London with English Law to apply. Plaintiff is preparing to commence arbitration against Defendant in London.

8. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| A. | Principal claim: | $637,000; |
| B. | Interest on principal claim at 7% compounded quarterly for two years: | $94,838; |
| C. | Attorneys' fees and costs of arbitration: | $210,210; |
| **Total:** | | **$942,048.** |

9. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during

the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

10. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of **$942,048** calculated to date to secure the Plaintiff's claims, and that all persons

claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D. That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court

E. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F. That this Court award Plaintiff its attorney's fees and costs of this action; and

G. That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: January 16, 2008
New York, NY

The Plaintiff,
KINGS OCEAN SHIPPING CO. LTD.,

By: [signature]

Charles E. Murphy
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
cem@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York )
) ss.: New York City
County of New York )

1. My name is Charles E. Murphy.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated: January 16, 2008
New York, NY

Charles E. Murphy

# Exhibit 1




Seoul, 3RD November, 2007

# FIXTURE NOTE

It is this day mutually agreed and confirmed between Messrs. KINGS OCEAN SHIPPING CO., LTD., Seoul as Owners and Messrs. OCEAN TRAFFIC CORPORATION, Tokyo as Charterers that:-

1. Vessel's name : M/V. ATLANTIC DREAM
   17,850 DWT , 1988 BUILT , GRT 15,893 , NRT 8,092 ,
   LOA 173.5M , BREATH 23.05M , DEPTH 13.7M , draft 10.02m
   FLAG MALTA , TWEEN DECKER RORO TYPE , 4H/4H ,
   GEAR SWL 12.5 TON X 4 ( 25 TON X 2 COMBINABLE ) , 125TON X 1
   GRAIN/BALE : 20,439M3 / 25,677M3
   SPEED & CONSUMPTION : ABT 14.5 KTS FO-ABT 27.3MT. MGO ABT 4.0MT
   ABT 14.0 KTS FO-ABT 25.0MT
   (all details are about)

2. Delivery : On passing off Singapore or on dropping last outward sea pilot at one safe port of Singapore at any time day and night SHINC.
3. Redelivery : On dropping last outward sea pilot at one safe port of Singapore / Japan range including China / Korea / South east asian countries at Charterers' option at any time day and night SHINC.
4. Duration : About 90days without guarantee via safe ports (Two laden legs).
5. Lay/Can. : November 6th / 12th , 2007.
6. Hire : To be agreed later.
7. Hire payment : 1st hire plus bunker value on dlivery to be paid within three (3) banking days after vessels delivery and Charterers receipt of relevent e-mail/telex/fax invoice. Charterers are only entitled to deduct from last sufficient hire payment estimated bunkers on redelivery.
8. Bunkers : Bunker on delivery to be as on board (about FO/MGO : 850MT/400MT) and redelivery to be about same quantities as on delivery. Bunkers to be arranged by Charterers throughout this charter and the balance bunkerage to be settled by the last purchase price. [OWNER'S] [hire]
9. No on/off survey to be held, delivery/redelivery time and bunker quantities per Master's report.
10. Cargoes : Rice in bag and/or lawful cargoes (non-dangerous cargo) .

- To be continued -



11. Charterers to pay Owners US$3,500.00 in lumpsum as I.L.O.H.C., including removal / disposal of dunngae / lashing materials. If removal / disposal to dunnage / lashinga materials to shore labour obligatory then same to be arranged and paid by Charterers.
Intermediate cleaning between voyages to be agreed directly with Master.
Intermediate dunnage/lashing removal also to be agreed directly with Master.
12. For cable charge/entertainment fee/victuring fee etc Charterers to pay USD 2,000.00 in lumpsum per month or prorata.
13. Owners to guarantee that the vessel's hatch covers to be water tight whole charter period and if any hatch cover found defective, same to rectified at Owners time and expense. Charterers also have the right to carry hose test on all hatch at any time during this charter at chaterers time and expense.
14. Vessel's Hold on delivery to be cleaned by sweeping only and dried up so axs to recieve Charterers intended cargo in all respects, free of salt, loose rust scale and previous cargo residue to pass hold inspection. Otherwise vessel to be off-hired from the time failuar to pass inspection untill repassing and cost incurred thereby for hold cleaning to be for Owners' account.
15. Cargo release without Bill (s) of Lading :
Owners to allow discharge/release against Charterers' single L.O.I. on Owners PNI club wording signed by Charterers on their official letter head with name of the authorised signatory.
The cargo shall remain under the agents custody and shall be released only on presentation of original bills of lading.
16. BIMCO STANDARD LAW & ARBITRATION CLAUSE 1998 – english law, london arbitration TO BE APPLIED & INCORPORATED IN C/P.
17. REVISED BIMCO BUNKER FUEL SULPHUR CONTENT CLAUSE 2005 for time charter parties TO BE APPLIED AND INCORPORATED IN C/P
18. BIMCO ISPS/MTSA CLAUSE for time charter parties 2005 TO BE APPLIED AND INCORPORATED IN C/P
19. BIMCO STOWAWAYS CLAUSE for time charter parties TO BE APPLIED AND INCORPORATED IN C/P
20. BIMCO CONWARTIME 2004 TO BE APPLIED AND INCORPORATED IN C/P
21. GENERAL AVERAGE AS PER YORK-ANTWERP ROULD 1994 IN LONDON

– To be continued –

22. CARGO EXCLUSION CLAUSE:

Owners Allow to load BAGGED GRAIN/BAGGED RICE/BAGGED FOOD CARGO/ /BAGGED FERRO SILICON/CONTAINERS/BAGGED SILICONE MAGANESE /BAGGED UREA/BITUMEN IN DRUM.

For the purpose of loading any bagged food in cargo compartments if any additional cleaning from normal sweeping and washing will be reqired same to be for Charterers time / expense and vessel to remain on hire.

OTHERS ASPER OWRS FOLLOWING CARGO EXCL:-

Acetone, acids, alumina, ammonium nitrate in bulk, ammonium sulphate, arms and ammunition, asphalt, bitumes, bones, borax in bulk, black powder, grain,rice, bagged food cargo, calcium carbide, calcium hydrochloride, carbon black, caustic soda, cement in bulk, charcoal, copra, creosoted goods, direct reduced iron ore and pellets, ferro silicon, fishmeal unless in I.S.O. fertilizer in bulk, hides, hot briquetted iron, hypochlorate, live stock, logs, naphtha, Niger seed, oilcakes, petroleum coke, petroleum products, pitch quicklime, radioactive and nuclear or fissionable materials (including waste), salt, scrap (including turnings), silicone manganese, sodium nitrate, sponge iron, sulphur, sunflower-seed expellers, tar, urea in bulk, zinc ashes, yellow phosphorus, motor blocks and oil scrap.

23. TRADING EXCLUSION:

Japan, New Zealand, Australia, Nigeria, Israel, Cuba, Syria.

- CHTRS OPTION VSL TO TRADE JAPAN BY PAYING ADDITIONAL COST USD5,000 WITH MIN 15DAYS NOTICE.
- EXTRA WAR RISK INSURANCE, IF ANY, TO BE FOR CHRATERERS ACCT.

24. Other terms, conditions and exceptions are as per Owners' back to back N.Y. Produce Exchange revised 1946.

25. Commission: Total 2.50% to be deducted from hire payment by Charterers.

One (1) Original Fixture Note being made, mutually signed and possessed by the Owners.

CHARTERERS:

*For and on behalf of*

*Ocean Traffic Corporation*

*Naoko Takahashi*

OWNERS:

KINGS OCEAN SHIPPING CO. LTD

Seoul, 4TH November, 2007

ADDENDUM NO.1
TO
M/V " ATLANTIC DREAM"
FIXTURE NOTE DATED 3RD November, 2007

It is this day mutually agreed and confirmed between Messrs. KINGS OCEAN SHIPPING CO., LTD., SEOUL as Owners and Messrs. OCEAN TRAFFIC CORPORATION, TOKYO as Charterers that:-

1. Hire : US$ 24,500.00 per day or prorata including crews over time payable 15days in advance.

2. Owner's Bank/Account : HANA BANK, SEOKYODONG BRANCH
USD ACCT NO. : 137-910005-30332
BENEFICIARY : KINGS OCEAN SHIPPING CO., LTD.

All other terms, conditions and exceptions of the Fixture Note are to remain unaltered.
One (1) original Addendum No.1 being made, mutually signed and possessed by the Owners.

CHARTERERS:

*For and on behalf of*
*Ocean Traffic Corporation*

*Naoko Takahashi*

OWNERS:






